IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

\- - -

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 19-728-1 |
| v. | : |
| CRAIG ALEX LEVIN, | : Philadelphia, Pennsylvania |
| | : June 29, 2022 |
| Defendant | : 11:01 a.m. |

\- - -

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE HARVEY BARTLE, III
UNITED STATES DISTRICT COURT JUDGE

\- - -

APPEARANCES:

For the Government: MICHELLE ROTELLA, ESQUIRE
Assistant United States Attorney
U.S. Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

For the Defendant: LUIS A. ORTIZ, ESQUIRE
121 South Broad Street
18th Floor
Philadelphia, PA 19107

Audio Operator: James F.G. Scheidt

Transcribed By: Michael T. Keating

\- - -

Proceedings recorded by electronic sound recording; transcript produced by computer-aided transcription service.

\- - -

(The following was heard in open court at 11:01 a.m.)

THE COURT: The Court has before it this morning a change of plea hearing in the case of The United States of America versus Craig Alex Levin, criminal action number 19-728. Mr. Scheidt, would you please swear in the defendant?

COURTROOM DEPUTY: Mr. Levin, would you please rise and raise your right hand, sir?

CRAIG ALEX LEVIN, Defendant, Sworn.

COURTROOM DEPUTY: Thank you. Please be seated.

THE COURT: Mr. Levin, do you read, write, and understand the English language?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Do you understand that during these proceedings, I will be asking you a series of questions?

THE DEFENDANT: Yes.

THE COURT: And I will assume that your answers are truthful?

THE DEFENDANT: Yes.

THE COURT: Since you are now sworn and are under oath, do you understand that if you should give me false answers, you are subject to possible

prosecution for perjury, that is lying under oath?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that I will be asking you questions in order to satisfy myself that you are competent and able to enter a plea?

THE DEFENDANT: Yes.

THE COURT: And to satisfy myself that if you decide to plead guilty, that you are knowingly and voluntarily giving up certain rights to which you would be entitled if you went to trial?

THE DEFENDANT: Yes.

THE COURT: If at any time you do not understand a question I'm asking you or you wish for further explanation, please indicate that to me, and I'll do my best to rephrase the question or explain it to you.

THE DEFENDANT: Okay, sir.

THE COURT: Also, if at any time you wish to speak to your lawyer outside of my hearing, I will of course permit you to do that.

Mr. Levin, are you a citizen of the United States?

THE DEFENDANT: Yes.

THE COURT: And how old are you?

THE DEFENDANT: 66.

THE COURT: And how far did you go in school?

THE DEFENDANT: I have a Master's Degree, and after I completed my Master's Degree, I received an additional 15 credits, so officially a Master's plus 15 credits.

THE COURT: And have you been employed in the last several years, and if so, what job or jobs have you held?

THE DEFENDANT: The last teaching position I held I taught at Lower Merion School District. And after 30 years, I was -- I worked -- in 2010, I was honored to be hired as an entry-level position for Department of Commerce. I was hired as an enumerator to do the census for 2010 in Montgomery County, Pennsylvania. And I was quickly promoted to supervisor, and then I was given additional duties of teaching newly-hired enumerators.

Then after that, I worked -- I became pretty much a professional Blackjack player in the Phillippines. I did that for eight years to supplement my pension.

THE COURT: Okay. Have you taken an drugs, medicine, or pills in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Have you drunk any alcoholic beverages in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for mental illness or narcotic addiction?

THE DEFENDANT: No.

THE COURT: Are you currently under the care of a physician?

THE DEFENDANT: No.

THE COURT: Do you understand, Mr. Levin, you have a right to be represented by an attorney in every stage of the proceeding against you?

THE DEFENDANT: Yes, I do.

THE COURT: And that if you cannot afford the service of an attorney, the Court will appoint one to represent you free of charge?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have an attorney here today?

THE DEFENDANT: Yes, I do.

THE COURT: Who is that?

THE DEFENDANT: He's sitting next to me. It's Mr. Ortiz.

THE COURT: Have you had ample opportunity

to discuss your case with Mr. Ortiz?

THE DEFENDANT: Yes, we have.

THE COURT: Are you satisfied with his representation of you?

THE DEFENDANT: Yes, I am.

THE COURT: Have you received a copy of a document called a superceding indictment which contains the written charges made against you by the grand jury?

THE DEFENDANT: Yes.

THE COURT: Do you understand, Mr. Levin, that the superceding indictment charges as follows: that on February 6th, 2018, and May 6th, 2019, you, a United States citizen, traveled from the Eastern District of Pennsylvania to the Phillippines for the purpose of engaging in illicit sexual conduct, that is to engage in a sexual act with a minor, and that you did so in violation of Title 18 United States Code Section 2423(b)?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that the superceding indictment charges that in or around October 2018, in the Eastern District of Pennsylvania and elsewhere, you did knowingly in and affecting interstate and foreign commerce recruit, entice,

harbor, transport, provide, obtain, maintain, solicit, or patronize by any means a person, that is minor 5, and attempted to do so knowing and in reckless disregard of the fact that minor 5 had not attained the age of 18 and would be caused to engage in a commercial sex act, and that you did so in violation of Title 18 United States Code Sections 1591(a)(1), 1591(b)(2), 1591(c), 1594, and 1596(a)(1)?

THE DEFENDANT: Yes.

THE COURT: Are you aware that the superceding indictment further charges that on or about April 13th and April 17th, 2019, in the Eastern District of Pennsylvania and elsewhere, you knowingly distributed a visual depiction using any means and facility of interstate commerce and foreign commerce, including by computer, and that the producing of that visual depiction involved the use of a minor engaging in sexually explicit conduct, and the visual depiction was of such conduct, and that you did so in violation of Title 18 United States Code Section 2252(a)(2)?

THE DEFENDANT: Yes.

THE COURT: And finally, are you aware that the superceding indictment charges that on or about

May 6th, 2019, in the Eastern District of Pennsylvania and elsewhere, you knowingly transported using means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, that is an Apple laptop, model A1466, containing visual depictions that involve the use of minors engaging in sexually explicit conduct, including minors who had not attained 12 years of age, and that you did so in violation of Title 18 United States Code Section 2252(a)(1)?

THE DEFENDANT: Yes.

THE COURT: Ms. Rotella, would you please summarize the terms of any plea agreement if there is any?

MS. ROTELLA: Certainly, Your Honor. He's -- the defendant and the government have entered into a plea agreement pursuant to 11(c)(1)(B), the Rules of Criminal Procedure, in which he will plead guilty to the counts that the Court just read to him, that is Counts 6, 9, 11, 13, 14, and 16 of the superceding indictment. The parties have agreed to recommend to the Court a sentence of -- and that is in, excuse me, paragraph 3. I'm sorry, Your Honor, just one moment.

I'll go chronologically as part of the

guilty plea agreement. At the time of sentencing, the government will move to dismiss the remaining counts of the superceding indictment. That's set forth in paragraph 2. We would recommend a sentence of imprisonment that is consistent with the recommendation that we've made in paragraph 6 of the guilty plea agreement. We would comment on the evidence and the circumstances of the case, and nothing will limit the government in its comments at sentencing or beyond.

Paragraph 3 of the guilty plea agreement that they've entered into explains the maximum terms and mandatory minimum terms, which does the Court wish me to go over those now?

THE COURT: We'll go over that a little later.

MS. ROTELLA: Okay. Paragraph 4 talks about what he faces on supervised release, which are varying terms of incarceration: up to five years on Count 11; up to three years on Counts 6 and 9; up to two years on Counts 13, 14, and 16; and he won't get credit for any time served should he -- should he violate.

In addition, paragraph 5 talks about his obligations under the Sex Offender Registration and

Notification Act, which we call SORNA, a federal law. As a result of his convictions, he'll be required to register where he lives, where he works, and where he goes to school, and he will have to comply with whatever state law where he -- where he does those things.

In paragraph 6, that is the agreement that I spoke about that's been reached between the parties. That's a recommendation to the Court as to the resolution of this matter. And that is the parties have agreed to recommend a range of imprisonment, anywhere from 15 years up to 50 years imprisonment, a mandatory minimum of five years of supervised release, a $30,000 special assessment under the JBTA, and also as part of this agreement, the defendant agrees that all contact with the victims and their families, including contact through any third party, is expressly prohibited.

As part of the agreement then, there are also a number of financial agreements that have been reached which are laid out in paragraphs 7, 8, and 9. Paragraph 10 also indicates that he will pay the Special Victims Witness Assessment in the amount of $600 at such time as directed by the Court. Paragraph 11 talks about his agreement to forfeit

certain assets that were used to facilitate his crimes here, and that is laid out on page 8 of the agreement, which is in paragraph 11. He agrees to forfeit his Apple Mac Pro laptop, his Samsung cellular phone, an Apple laptop computer, another Apple phone, a Kingston USB drive, an iMac, one SanDisk memory card, an iPhone also seized from Mr. Levin's home, one laptop charger, and one Black Palm cellular phone. And all of those are laid out with specificity, including serial numbers and IMEI numbers. The remainder of that paragraph talks about the obligations that Mr. Levin is subject to in terms of facilitating the forfeiture action here.

In paragraph 12, it talks about that the defendant cannot withdraw his plea if the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement, and nobody has promised or guaranteed to him what sentence this Court will impose.

Paragraph 13 talks about the fact that though he is not pleading guilty to the other offenses that are charged in the superceding indictment, the defendant still admits, pursuant to Guidelines Section 1B1.2, that he committed those offenses, and specifically that he committed the

offenses that are charged in Counts 1 through 5, 7, 8, 10, 12, and 15, which are all the dismissed -- the counts to be dismissed as part of this agreement.

He understands and agrees that for purposes of determining his guideline range, Section 1B1.2(c) provides that these other offenses which -- to which he is not pleading guilty will be treated as if he had been convicted of those counts charging those offenses.

Then in part -- excuse me, paragraph 14, there are certain stipulations that have been reached between the parties in terms of calculating his guideline range here. The defendant understands that the parties accept his -- what's already been agreed upon and is stated in the enhancements here. The parties are free to argue the applicability of any other provision. They're not binding on the Probation Office or the Court, and the Court may make different factual and legal determinations that we've agreed to here in this plea agreement.

In subparagraph 14(a), the parties agree and stipulate that Counts 6 and 9 do not group. Subparagraph (b), the base offense level on each of Counts 6 and 9 is a 24. In paragraph (c), the parties agree and stipulate Counts 6 and 9 involved

unduly influencing a child, and that as a result, the base offense level is increased by two. Paragraph (d), the parties agree and stipulate that the offenses in Counts 6 and 9 involve the use of a computer, increasing, again, by two levels the offense level. Paragraph (e) in Counts 6 and 9, both involved a commercial sex act, and that as a result, the base offense level is increased another two points. In paragraph (f), the parties agree and stipulate that Count 11 does not group with any other count and that the base offense level applicable to Count 11 is 30. In paragraph (g), the parties agree and stipulate that the offense in Count 11 also involved unduly influencing a child, and that as a result, the base offense level is increased by two. Paragraph (h), the offense in Count 11 involved the use of a computer, also increasing his base offense level by two. In paragraph (I), Count 11 involved a commercial sex act, increasing his offense level by two for that count.

As to Counts 13, 14, and 16 in paragraph (j), the base offense level is a 22. In paragraph (k), Counts 13, 14, and 16 are increased by five levels because the offense involved distribution of child pornography to a minor. In paragraph 11, the

parties agree and stipulate that the base offense is also increased another five levels under the pattern exception under 2G2.2(b)(5). It involved a pattern of activity involving the sexual exploitation of a minor. In paragraph (m), Counts 13, 14, and 16 again are increased by another two levels because the offense involved the use of a computer. In paragraph (n), the 13, 14, and 16 counts are increased by another two levels because it involved the defendant's obstruction of justice and his destruction of the computer equipment. In paragraph (o), the parties agree and stipulate that the four groups that are described above result in the assignment of three units under the multi-count adjustment and in the greater adjusted offense level of 36. This results in a combined adjusted offense level of 39.

Then in paragraph (p), the parties agree and stipulate that the combined adjusted offense level is increased another five levels under Sentencing Guideline 4B1.5, under that pattern enhancement, and that is because one, the offenses of conviction are covered sex crimes; two, neither the career offender nor subsection 4B -- of subsection (a) of 4B1.5 apply; and three, the defendant engaged

in a pattern of activity involving prohibited sexual conduct, meaning two or more instances. In paragraph (q), the parties agree and stipulate that as of the date of the agreement, he's entitled to a two-level downward departure; and in paragraph (r), he's entitled to another one-level -- one-level downward adjustment.

In paragraph 15, it talks about if he were to commit any other crime after the date of this agreement, it outlines what the government may do under the terms of this agreement, meaning that we may view it as a breach of the agreement. In paragraph 16, it talks about in exchange for the promises in entering into the agreement, this is his waiver provision. He's waiving all rights to challenge his conviction, sentence, or any other matter relating to his prosecution regardless under which provision of law it would arise. Of course if the government appeals, then the defendant may appeal. But if the government does not, this is a -- there are limited circumstances under which Mr. Levin may raise an appeal. He may do so and claim that his sentence on any count of conviction exceeds the statutory maximum. He may do so to challenge a decision by the Sentencing Judge to impose a total

sentence of imprisonment above the range that is set forth in paragraph 6 of this agreement, meaning above the 15 to 50-year term that's been agreed upon by the parties. And third, he may challenge that an attorney who represented him during the course of the criminal case provided constitutionally-ineffective assistance of counsel. But other than that, he may not file an appeal.

Paragraph 7 talks about that since he is knowingly waiving all of his rights to appeal or collaterally attack, if he nonetheless does so anyway, the government may consider that a breach of the agreement.

Paragraph 18 talks about that he is waiving all of his rights under the Freedom of Information Act.

Paragraph 19 talks about that he is satisfied with the legal representation provided by his attorney, that they've fully discussed this plea agreement that they've negotiated, and that he has agreed to plead guilty here because he admits that he is guilty.

Paragraph 20 acknowledges that there is no additional -- there are no additional promises, agreements, or understandings other than what is set

forth in this written plea agreement. And also, there was a prior proffer session, and so the proffer letter, which is dated August 20th of 2021 is revoked as of the date of this plea agreement.

THE COURT: Thank you.

MS. ROTELLA: Thank you.

THE COURT: May I see the signed agreement?

(Pause in proceedings.)

MR. ORTIZ: May I approach, Your Honor?

THE COURT: Yes, you may.

(Pause in proceedings.)

THE COURT: Mr. Levin, I'm having placed before you the original plea agreement. Please turn to the last page of that agreement. Is that your signature?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: Did you read the document before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Did you understand what it said?

THE DEFENDANT: Yes.

THE COURT: Did you discuss it with your attorney --

THE DEFENDANT: Yes, I did.

THE COURT: -- before you signed it? There's also an additional document called acknowledgment of rights which is attached. If you would look at the final page of that document? Did you sign that, Mr. Levin?

THE DEFENDANT: Yes, I did.

THE COURT: Did you read it before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you understand what it said?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you discuss it with your attorney before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Do you understand, Mr. Levin, that this plea agreement contains what we call an appellate and collateral attack waiver, that is that you will not have any right to appeal any sentence that I impose or any conviction except under the very limited circumstances set forth in the plea agreement?

THE DEFENDANT: I understand.

THE COURT: Has anyone made any threat or promise or assurance to you of any kind other than

what is set forth in the plea agreement and acknowledgment of rights to convince or induce you to sign it?

THE DEFENDANT: No.

THE COURT: Do you understand that if you plead guilty today, you'll give up your right to challenge the superceding indictment which has been returned against you by the grand jury?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you would have a right to be tried by a jury if you plead not guilty?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you, through your attorney, could participate in the selection of any jury?

THE DEFENDANT: Yes.

THE COURT: Are you aware that if you plead not guilty, you have the right to be tried with the assistance of a lawyer?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that at a trial, you would be presumed to be innocent?

THE DEFENDANT: Yes.

THE COURT: And that the government would

be required to prove you guilty by competent evidence and beyond a reasonable doubt before you could be found guilty?

THE DEFENDANT: I understand.

THE COURT: Do you understand in the course of a trial, the witnesses for the government would have to come to court and testify in your presence?

THE DEFENDANT: Yes.

THE COURT: And that your attorney could cross-examine the witnesses for the government, object to evidence offered by the government, and offer evidence on your behalf?

THE DEFENDANT: Yes.

THE COURT: Are you aware that if you plead guilty, you'll be giving up your right to challenge the manner in which the government obtained evidence against you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that at a trial, you would have the right to subpoena, that is compel the attendance of witnesses?

THE DEFENDANT: Yes.

THE COURT: And that you would have the right to present your own witnesses, including character witnesses, whose testimony could possibly

raise a reasonable doubt about your guilt?

THE DEFENDANT: I understand.

THE COURT: Do you understand that at a trial, while you would have the right to testify if you chose to do so, you also would have the right not to testify?

THE DEFENDANT: I understand.

THE COURT: And that no inference or suggestion of guilt could be drawn from the fact that you did not testify?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you have a right not to be compelled to incriminate yourself?

THE DEFENDANT: I understand.

THE COURT: That means no one could force you to make a statement or to testify about what happened here.

THE DEFENDANT: Yes.

THE COURT: Are you aware that your attorney could argue to the jury or the Court on your behalf against the government's case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you could only be convicted by a jury which unanimously found you guilty?

THE DEFENDANT: Yes.

THE COURT: That in order to be convicted, all 12 jurors would have to agree on your guilt?

THE DEFENDANT: Yes.

THE COURT: If at trial, you are found guilty, do you understand that after a trial, you would be able to appeal the verdict to an appellate court?

THE DEFENDANT: Yes.

THE COURT: And that you could have a lawyer to represent you on that appeal?

THE DEFENDANT: Yes.

THE COURT: And that if you could not afford a lawyer, the Court would appoint one to represent you free of charge?

THE DEFENDANT: I understand.

THE COURT: And that the appellate court might or might not reverse your conviction?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty and I accept your plea, are you aware that you will waive, that is give up forever, your right to a further trial of any kind as well as the other rights that I have just discussed?

THE DEFENDANT: I understand.

THE COURT: And that there will be no trial?

THE DEFENDANT: Yes.

THE COURT: And, as we discussed a few moments ago, that if you plead guilty, you'll be giving up your right to appeal any decision, any sentencing, and you would also give up your right to file any later collateral attack on that sentence, except as specifically provided in the guilty plea agreement?

THE DEFENDANT: Yes.

THE COURT: Do you understand, Mr. Levin, if you plead guilty here today, you would be pleading guilty to two counts of foreign travel with intent to engage in illicit sexual conduct with a minor in violation of Title 18 United States Code Section 2423(b), one count of attempted sex trafficking of a minor in violation of Title 18 United States Code Sections 19 -- 1591 and 1594, two counts of distribution of child pornography in violation of Title 18 United States Code Section 2252(a)(2), and finally, one count of transportation in visual depictions of minors engaged in sexually explicit conduct in violation of Title 18 United States Code Section 22(a)(1)?

THE DEFENDANT: Yes.

THE COURT: Now, Mr. Levin, I want to review briefly with you the essential elements of these crimes. For the crime of foreign travel with intent to engage in illicit sexual conduct with a minor, as charged in Counts 6 and 9 of the superceding indictment, the elements are that you are a citizen of the United States, that you traveled in foreign commerce or attempted to do so, and that you did so for the purpose of engaging in illicit sexual conduct, that is for the purpose of engaging in a sexual act with a minor or for the purpose of producing child pornography.

THE DEFENDANT: Yes.

THE COURT: Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, with respect to the crime of attempted sex trafficking of a minor, as charged in Count 11 of the superceding indictment, the elements are that you knowingly transported or recruited or enticed or harbored or provided or obtained or maintained or patronized or solicited a person by any means, that you knew or were in reckless disregard of the fact that the victim was under the age of 18, that you knew or were in

reckless disregard of the fact that this person would be engaged in a commercial sex act, and finally, that your conduct was in or affecting interstate or foreign commerce.

THE DEFENDANT: Yes.

THE COURT: Now, with respect to the crime of distribution of child pornography, as charged in Counts 13 and 14 of the superceding indictment, the essential elements are that you knowingly distributed a visual depiction, that the visual depiction involved the use of a minor engaging in sexually explicit conduct, that you knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and portrayed a minor engaged in that conduct, and finally, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce.

THE DEFENDANT: Yes.

THE COURT: You understand that?

THE DEFENDANT: Yes, I do.

THE COURT: And finally, for the crime of transportation of a visual depiction of minors

engaged in sexually explicit conduct, as charged in Count 16 of the superceding indictment, the elements are that you knowingly transported a visual depiction in interstate or foreign commerce by any means, including by computer, that the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, that such visual depiction is of a minor engaged in sexually explicit conduct, and that you knew that at least one of the performers in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Ms. Rotella, would you please summarize the factual basis for any plea?

MS. ROTELLA: Certainly, Your Honor. I would indicate that the government did file -- has not filed but drafted a change of plea memorandum which was provided to the Court in advance of today's hearing and also was provided to the defendant and his attorney. His attorney has indicated that they've both gone over it together and that they agree with the facts, all of the facts, that were cited in the change of plea memorandum. But the

change of plea memorandum is 29 pages long, and so there was a shortened factual basis that we were -- we've agreed to offer the Court here as part of the hearing, but to note for the record that they both expressly agree with all of the facts that are contained in the larger 29-page change of plea memorandum. So if that is --

THE COURT: Has that been signed by the defendant?

MS. ROTELLA: It has not, but we --

THE COURT: Well --

MS. ROTELLA: We certainly could have that.

THE COURT: Well, does he have -- has --

MR. ORTIZ: He has -- Your Honor, I -- we have had -- we had a copy. My client has his own copy of both. And in the interest of not reading all 29 pages, we came up with a summary which my client also has fully reviewed, so --

THE COURT: All right. Well, why don't --

MR. ORTIZ: And I've reviewed it many times with him.

THE COURT: I believe I have the -- I have the change of plea memorandum, which is the full version, the complete version, correct?

MR. ORTIZ: Yes.

MS. ROTELLA: So we could have the defendant sign that, Your Honor.

THE COURT: Well, at least we could -- why don't we place a copy before him and have it marked as exhibit -- we'll just mark it as Exhibit 1 --

MR. ORTIZ: Yes.

THE COURT: -- and file it of record, all right?

MR. ORTIZ: Yes. That's what I was going to say. We could file it as an exhibit, and we --

THE COURT: Why don't we do that?

MR. ORTIZ: -- agree to stipulate --

THE COURT: All right.

MR. ORTIZ: -- to the acts contained therein.

THE COURT: Well, Mr. Levin, do you have before you Exhibit 1, is that -- which is called "Change of Plea Memorandum?"

THE DEFENDANT: Yes, I have it.

THE COURT: Okay. Have you read that document?

THE DEFENDANT: Yes, I have.

THE COURT: Do you agree with the factual assertions made in that change of plea memorandum?

THE DEFENDANT: Yes, I do.

THE COURT: And have you discussed this with your attorney?

THE DEFENDANT: Yes, I have.

THE COURT: Anything further that -- and when you say you agree with the statement -- I think it was signed by Sarah Damiani, the Assistant United States Attorney --

THE DEFENDANT: That's correct.

THE COURT: -- on June 23rd, 2022, is that correct?

THE DEFENDANT: Yes, it is.

THE COURT: That's the document?

THE DEFENDANT: Yes.

THE COURT: And has anyone forced you to agree to that statement of facts?

THE DEFENDANT: No, sir.

THE COURT: Are you agreeing to that statement of facts of your own free will?

THE DEFENDANT: Yes, I am.

THE COURT: All right. Ms. Rotella, would you please state the maximum penalties to which Mr. Levin is subject, including any mandatory minimum penalties?

MS. ROTELLA: Certainly, Your Honor. For foreign travel -- I'm sorry, excuse me one second.

For the offenses charged in Counts 6 and 9, which is foreign travel to engage in sex with a minor, the maximum term of imprisonment is a 30-year term, a five-year period of supervised release, a $250,000 fine, a $100 special assessment. But if he's found not to be indigent here, he is also subject to an additional $5,000 mandatory special assessment under the Justice for Victims of Trafficking Act.

For Count 11, the attempted sex-trafficking of a minor -- and I should say for Counts 6 and 9, that's for each count.

Count 11, attempted sex-trafficking of a minor, he faces a maximum of life in prison, a ten-year mandatory minimum term, mandatory minimum of five years up to lifetime supervised release, a $250,000 fine, a $100 special assessment. Again, if found not to be indigent, the additional $5,000 fine for the Justice for Victims of Trafficking also applies.

For Counts 13 and 14, which charge distribution of child pornography, and for Count 16, which charges transportation, they all carry the same penalties. And for each count, you face a maximum of 20 years imprisonment with a mandatory minimum five-year term, a mandatory minimum five years up to a

lifetime of supervised release, a $250,000 fine, a $100 special assessment. The $5,000 assessment under the Justice for Victims of Trafficking Act applies for each count as well if you're found not to be indigent. There's mandatory restitution to each of your victims in the minimum amount of $3,000, as well as these three counts carry additional special assessments of up to $35,000 each.

So then all total, what you are looking at is a maximum of life in prison with a mandatory minimum of ten years, a mandatory minimum five years up to a lifetime supervised release, a $1.5 million fine, $600 in special assessments, an additional $30,000 mandatory special assessments under that Justice for Victims of Trafficking Act if you're found not to be indigent. An additional up to $105,000 mandatory assessment may also be found to apply. Again, restitution is mandatory in a minimum amount of $3,000 for Counts 13, 14, and 16.

You also face forfeiture of all the proceeds from your offenses, all the property that's involved in the commission of your offenses. And of course you are also subject, according to your plea agreement, to the no contact provision with any of your victims.

You've also been advised that you are subject to SORNA, which is the registration requirement as a result of your convictions, and you are also informed that supervised release may be revoked if your terms and conditions are violated, and that you face up to five years additional on Count 11, three years additional on Counts 6 and 9, and two years additional on Counts 13, 14, and 16. Thank you.

THE COURT: Mr. Levin, do you understand that the maximum and mandatory minimum penalties are as set forth by the Assistant United States Attorney?

THE DEFENDANT: Yes, I do.

THE COURT: Do you also understand, Mr. Levin, that the guilty plea agreement which you signed contains a joint recommendation with respect to a sentencing range? Do you understand that, that both --

THE DEFENDANT: Yes.

THE COURT: -- you and the government have agreed on a recommendation to the Court?

THE DEFENDANT: Yes.

THE COURT: Do you understand that that recommendation is in no way binding upon this Court?

THE DEFENDANT: Yes, I do.

THE COURT: Do you also understand, Mr. Levin, that if you plead guilty and are sentenced, you may be deprived of certain valuable rights, such as your right to vote, to hold public office, to serve on a jury, to serve in the armed forces, to possess a firearm, or to hold a professional license?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the Court will not be able to determine how the advisory sentencing guidelines and other applicable law will be applied in your case until after a presentence report has been completed, and both you and the government will have an opportunity to challenge any facts or other matters set forth in that report?

THE DEFENDANT: Yes, I do.

THE COURT: Are you aware that the Court could, in appropriate circumstances, impose a sentence which is more severe or less severe than a sentence which the advisory sentencing guidelines recommend?

THE DEFENDANT: Yes.

THE COURT: Do you understand that when there is a mandatory minimum sentence, as there is here, the Court cannot sentence you below that mandatory minimum sentence unless the government

files a motion permitting me to do so?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you are sent to prison, a term of supervised release will be imposed to be served after you are released from prison?

THE DEFENDANT: Yes, I understand.

THE COURT: And that if you should violate your terms of supervised release, you may be returned to prison?

THE DEFENDANT: Yes.

THE COURT: Do you understand on the basis of a guilty plea, the Court may impose a sentence up to the maximum permitted by law?

THE DEFENDANT: Yes, I understand.

THE COURT: Do you understand that you will not be entitled to withdraw any guilty plea if I should impose a more severe sentence than you expect or than anyone else recommends?

THE DEFENDANT: Yes, I understand.

THE COURT: Mr. Levin, have you discussed with your attorney the charges against you, your right to contest them, and the maximum and mandatory minimum penalties?

THE DEFENDANT: We have discussed that.

THE COURT: Having heard from me what your rights are if you plead not guilty and what may occur if you plead guilty, do you still wish to give up your right to a trial and plead guilty?

THE DEFENDANT: Yes, I do.

THE COURT: Has anyone threatened you, coerced you, or forced you in any way to plead guilty?

THE DEFENDANT: No.

THE COURT: Has any plea agreement been entered into or any promises made other than what has already been stated on the record here?

THE DEFENDANT: No, sir.

THE COURT: Has anyone told you or promised you what sentence this Court will impose?

THE DEFENDANT: No.

THE COURT: Has the decision to change your plea to guilty been made of your own free will?

THE DEFENDANT: Yes.

THE COURT: Does either the attorney for the government or the attorney for the defendant have any doubts as to the defendant's competence to enter a plea at this -- today?

MS. ROTELLA: No, Your Honor.

MR. ORTIZ: No, Your Honor.

THE COURT: Are counsel satisfied that the willingness to plead guilty is voluntary?

MS. ROTELLA: Yes, Your Honor.

MR. ORTIZ: Yes, Your Honor.

THE COURT: Are counsel satisfied that a guilty plea is not based on any plea agreement or promises except as disclosed on this record?

MS. ROTELLA: Yes, Your Honor.

MR. ORTIZ: I'm satisfied, yes, Your Honor.

THE COURT: Are counsel satisfied that any guilty plea is being made with a full understanding by the defendant of the nature of the charges, of the maximum and mandatory minimum penalties, and of the defendant's legal rights to contest the charges?

MS. ROTELLA: Yes, Your Honor.

MR. ORTIZ: Yes, Your Honor.

THE COURT: Are counsel satisfied there is a factual basis for the plea?

MS. ROTELLA: Yes, Your Honor.

MR. ORTIZ: Yes, Your Honor.

THE COURT: Mr. Scheidt, would you please take the plea?

COURTROOM DEPUTY: Mr. Levin, would you please rise? Mr. Craig Alex Levin, you have here before pleaded not guilty to bill of superceding

indictment number 2019-728-1, charging you with Counts 6 and 9, interstate and foreign travel for the purpose of engaging in illicit sexual conduct with a minor in violation of Title 18 United States Code Section 2423(b) and (f); Count 11 charging you with sex-trafficking of a minor in violation of Title 18 United States Code Section 1591(a)(1), (b)(2), (c), 1594, and 1956(a)(1); also charging you with Counts 13 and 14, distribution of child pornography --

(Pause in proceedings.)

COURTROOM DEPUTY: -- distribution of child pornography in violation of Title 18 United States Code Section 2252(a)(2), (b)(1); and also Count 16, transportation of child pornography in violation of Title 18 United States Code Section 2252(a)(1) and (b). Now, as to Counts 6, 9, 11, 13, 14, and 16 of the superceding indictment, how do you plead, guilty or not guilty?

THE DEFENDANT: Not guilty.

COURTROOM DEPUTY: Thank you. Please be seated.

MS. ROTELLA: Wait, I'm sorry.

THE COURT: Not guilty? Well --

THE DEFENDANT: Yeah, I plead guilty.

THE COURT: You're pleading guilty?

THE DEFENDANT: Yeah.

THE COURT: Mr. Levin, are you pleading guilty to Counts 6, 9, 11, 13, 16 -- 14, and 16 of the superceding indictment because you are, in fact, guilty as charged?

THE DEFENDANT: Yes.

THE COURT: You may be seated. I find that the defendant, Craig Alex Levin, is competent to plead, that his plea of guilty is knowing and voluntary and not the result of force or threats or any promises apart from the plea agreement disclosed on this record, that there is a factual basis for his plea of guilty, that the defendant understands the charges, his legal rights, and the maximum and mandatory minimum penalties involved, and that the defendant understands that he is waiving and is giving up his right to a trial. The Court accepts the guilty plea.

I'll order a presentence investigation report by the Probation Office, and I will set sentencing for early October of this year. Do you have a date?

COURTROOM DEPUTY: Your Honor, Thursday, October 6th, at 10:00 a.m. Thursday, October 6th --

THE COURT: 6th, at 10 a.m.

COURTROOM DEPUTY: -- at 10 a.m.

THE COURT: Anything further from the government, Ms. Rotella?

MS. ROTELLA: No, Your Honor. Thank you.

THE COURT: Mr. Ortiz, anything further?

MR. ORTIZ: No, Your Honor. Thank you.

THE COURT: Thank you very much.

(Proceedings adjourned, 11:42 a.m.)

* * *

CERTIFICATION

I, Michael Keating, do hereby certify that the foregoing is a true and correct transcript from the electronic sound recordings of the proceedings in the above-captioned matter.

7/4/22

Date

Michael Keating