```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION
                              :
          v.                  :
                              :
CRAIG ALEX LEVIN              :      NO. 19-728
```

MEMORANDUM

Bartle, J.                                      February 28, 2023

Before the court is the second motion of defendant, Craig Alex Levin, to withdraw his guilty plea. He contends that his two prior attorneys in this action provided him with ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution. Defendant, a former high school teacher and an American citizen, was the subject of a superseding indictment containing sixteen counts. The charges all relate to defendant's travel to the Philippines for the purpose of having sex with underage girls.

I

A defendant may withdraw a guilty plea under Rule 11(d)(2)(B) if "the defendant can show a fair and just reason for requesting the withdrawal." The defendant's burden is "substantial." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003). The court must consider three factors in deciding whether to grant defendant's motion. They are: "(1) whether the defendant asserts his innocence; (2) the

strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Jones, 336 F.3d at 252).

## II

The court held an evidentiary hearing on defendant's pending motion to withdraw his guilty plea. Both his prior attorneys testified at length.

Richard Maurer, Esquire, his first attorney, was retained by defendant's family and entered his appearance on February 25, 2020 after the indictment was unsealed. In support of his defense, defendant also engaged Mark Christian Tangpuz, an attorney in the Philippines, to obtain affidavits from the minors who were the alleged subjects of defendant's illegal conduct. Tangpuz secured an affidavit from a minor who refuted that she met defendant for sex and another from a minor who refuted that she brought defendant underage girls and child pornography. In the affidavits, the minors claim that the police had forced them to make false statements. Tangpuz also produced a third affidavit from a close friend of a minor identified in the indictment. She avers that her friend was also forced by the Philippines police to give a false statement. All affidavits were dated in April 2020. Tangpuz sent the

affidavits shortly afterward via email to Maurer who had no involvement in securing them from the minors.

Maurer attached these three affidavits to a motion to dismiss the indictment which he filed on April 24, 2020.[1]  Yet he had concerns about their veracity because they included boilerplate legal language and were notarized in the Philippines.[2]  Maurer thereafter learned that the Government had obtained contrary affidavits of United States legal attachés in the Philippines dated January 2021.  The attachés interviewed the minors who, according to the attachés, refuted the affidavits obtained by Tangpuz.  The Government advised Maurer that two of the minors would appear as witnesses at trial and testify under oath that:  (1) the affidavits obtained by Tangpuz were false; (2) they had never made those statements; (3) the signatures on the affidavits were not theirs; and (4) the original videotaped statements they made to the Philippines police remained truthful and accurate.  Maurer contacted Tangpuz

---

1.   The court denied the motion to dismiss on May 13, 2020. See United States v. Levin, No. CR 19-728, 2020 WL 2474424 (E.D. Pa. May 13, 2020).

2.   A fourth affidavit from a minor identified in the indictment was not attached to defendant's motion to dismiss but was admitted as part of Government's Exhibit 5 during the hearing on this motion to withdraw defendant's guilty plea.  In the affidavit, dated June 2020, the minor also claims that she was pressured by Philippines police to state falsely that she had sex with defendant.

about the affidavits but never received a response. Maurer shared his concerns and what he had learned with the defendant.

While represented by Maurer, defendant twice appeared before the court--on January 25, 2021 and February 23, 2021--intending to plead guilty, but both times he changed his mind during the hearings. On May 6, 2021, the Government filed a superseding indictment with additional counts related to his conduct in the Philippines. The superseding indictment referenced three minors with whom defendant had allegedly had a sexual relationship.

On August 17, 2021, Maurer met with defendant to discuss extensive notebooks that had been seized from his hotel room in the Philippines. In these notebooks, defendant maintained a rating system for girls that included face, body, sexual interaction, personality, and age categories. At the end of that meeting, after growing resigned to the weight of the evidence against him, defendant asked Maurer to arrange a proffer with the Government. Maurer advised defendant in detail about the serious risks in doing so. He explained that the decision to proffer is a "fundamental fork in the road" because defendant would lose the ability to offer any evidence at trial that contradicts anything he said in a proffer. Maurer also reviewed a sample proffer letter with defendant which outlined how the Government could use statements made by defendant during

a proffer. Nevertheless, at defendant's insistence, Maurer arranged a proffer with the Government but told defendant that he could always change his mind.

On the day of the proffer, August 20, 2021, Maurer again reviewed the proffer letter with defendant and again discussed the risks of proceeding. Defendant was still eager to move forward and signed the proffer letter which outlined consequences of proffering.[3] During his proffer, defendant, among other things, admitted to: having sex with underage girls in the Philippines and taking advantage of them due to their socioeconomic status; traveling to the Philippines for the purpose of having sex with minors; and asking his ex-wife to direct his son to destroy a laptop on which he had downloaded child pornography. Immediately after the proffer, defendant insisted on a second session with the Government. Eleven days later, on August 31, 2021, defendant reiterated his illicit conduct in the Philippines.

---

3. The proffer letter defendant signed stated: "[I]f your client is a witness or party at any trial or other legal proceedings and testifies or makes representations through counsel materially different from statements made or information provided during the 'off-the-record' proffer, the government may cross-examine your client, introduce rebuttal evidence and make representations based on statements made or information provided during the 'off-the-record' proffer. This provision helps to assure that your client does not abuse the opportunity for an 'off-the-record' proffer, make materially false statements to a government agency, commit perjury or offer false evidence at trial or other legal proceedings."

After defendant's second proffer, Maurer again met with him to review his analysis of the case and the extensive evidence against him which included, among other things, his notebooks rating minor girls, thousands of pages of incriminating Facebook messages, and his proffers.  After this meeting, defendant decided that he no longer wanted Maurer to represent him.  The court held a hearing on April 4, 2022 at which time it appointed Luis A. Ortiz, Esquire to be his new counsel.

Ortiz immediately contacted Maurer and the Government for all discovery in the case.  He received access to at least 170,000 pages of discovery, including the above referenced affidavits.  Ortiz and Maurer discussed their mutual concerns about the veracity of the affidavits sent by Tangpuz.  Ortiz also contacted the Government about the affidavits and was told about the two witnesses who would testify that they never gave the statements in the affidavits and that their original statements to the Philippines police implicating defendant remained truthful and accurate.  After having these conversations, Ortiz explained to defendant that the testimony of these witnesses, rather than the affidavits, would control the outcome at a trial.

Over the next month, Ortiz reviewed at length with defendant the extensive evidence against him and advised him to

consider pleading guilty to the charges.  They discussed potential defenses, including the defense that defendant did not travel to the Philippines for the purpose of having sex with minors.  Ortiz explained that this defense would not be viable because defendant had a home in the United States and had been moving from hotel to hotel while meeting with underage girls during his extensive trips to the Philippines.

Defendant at the time agreed to have Ortiz proceed with plea negotiations with the Government.  In the process, defendant provided input on the factual basis described in the Government's change of plea memorandum.  On June 23, 2022, after discussion with Ortiz, defendant signed a written plea agreement.  Six days later, on June 29, the court held a hearing at which defendant pleaded guilty to six of the sixteen counts: Counts 6 and 9 charging foreign travel to engage in sex with a minor (18 U.S.C. § 2423(b)); Count 11 charging attempted sex trafficking of a minor (18 U.S.C. § 1591); Counts 13 and 14 charging distribution of child pornography (18 U.S.C. § 2252(a)(2) and (b)(1)); and Count 16 charging transportation of child pornography (18 U.S.C. § 2252(a)(1)).

At the June 29 hearing and before he entered his plea, the court reviewed in detail with defendant his rights, the maximum and mandatory minimum penalties he faced, and the consequences of pleading guilty including the requirement that

he register as a sex offender.  In response to the court's questions, defendant swore that he had read the superseding indictment, discussed it with his lawyer, was satisfied with his attorney's representation, and understood the charges against him and their elements.  Defendant admitted to reading and understanding the Guilty Plea Agreement before he signed it.  The facts the Government expected to prove were recited in a Change of Plea Memorandum which he had read and discussed with his attorney.  He agreed to the accuracy of the recited facts and admitted he was in fact guilty as charged.  The court found that he had not been threatened, coerced, or forced to sign his plea agreement or to plead guilty, that no undisclosed promises had been made, that he was competent to plead, that he understood his rights, and that his plea was knowing and voluntary.

After pleading guilty, defendant retained new counsel, John J. McMahon, Esquire, who entered his appearance on November 15, 2022.  That day, defendant filed his first motion to withdraw his guilty plea on the grounds that he received ineffective assistance of counsel and that he pleaded guilty under duress.  After holding a hearing at which defendant testified, the court found defendant not to be credible on the issue of duress and denied his motion.  See United States v. Levin, No. CR 19-728, 2022 WL 17811394 (E.D. Pa. Dec. 19, 2022).

III

Defendant, as noted above, claims that both Maurer and Ortiz provided him with ineffective assistance. In Hill v. Lockhart, the Supreme Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). A defendant seeking to withdraw a guilty plea on the grounds that he received ineffective assistance must establish that his counsel's representation fell below an objective reasonableness standard. Hill, 474 U.S. at 57-59. The defendant must also show that "counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. If counsel failed to investigate or discover potentially exculpatory evidence, the question is whether the discovery would have changed counsel's recommendation as to a guilty plea. The answer depends in large part on a prediction of whether the evidence would have changed the outcome of a trial. Id. Similarly, a defendant claiming that his counsel failed to investigate an affirmative defense must show that "the affirmative defense likely would have succeeded at trial." Id.

Defendant argues that Maurer provided ineffective assistance by failing to advise him that proffering with the Government was not in his best interest.  This argument is totally without merit.  Maurer thoroughly explained the dangers of a proffer.  Despite Maurer's warnings, it was defendant who insisted on not one but two proffers.  Defendant, a former high school teacher and well-educated individual, made a conscious and voluntary decision to go forward with his proffers.  Maurer acted reasonably in counseling him to the contrary.

Defendant claims he pleaded guilty not on the advice of Maurer but on the advice of Ortiz.  Defendant has failed to meet his burden that Ortiz provided ineffective assistance. Defendant first claims that Ortiz failed to obtain relevant discovery, primarily the affidavits produced by Tangpuz.  As noted above, Ortiz contacted Maurer and the Government shortly after being appointed to represent defendant and received over 170,000 documents.  Ortiz confirmed that he received the affidavits from the Government at least by May 12, 2022.  Both Ortiz and Maurer testified that they had a conversation about their mutual concerns over the veracity of the affidavits.  In addition, Ortiz had several conversations with defendant about the affidavits, often at the request of defendant.  Although defendant testified that Ortiz was unaware of the affidavits

until after he pleaded guilty, the court does not find defendant to be credible.

Defendant next argues Ortiz failed to conduct a pre-trial investigation and instead encouraged him to plead guilty without considering affirmative defenses.  This argument also fails.  Ortiz reviewed and was familiar with the discovery.  He discussed potential affirmative defenses with defendant, including the defense that he had not traveled to the Philippines for the purpose of having sex with minors.  Ortiz had explained that this was not a viable defense for defendant because defendant still owned a home in the United States and appeared to be living primarily in hotels while meeting with girls in the Philippines.  He also explained that the Government only needed to show that one of defendant's motivating purposes--not necessarily his only or primary purpose--for traveling to the Philippines was to have sex with minors.  Ortiz acted reasonably in considering potential affirmative defenses but advising defendant that it was in his best interest to plead guilty.

Furthermore, defendant has failed to show that this affirmative defense was likely to succeed at trial.  As discussed above, defendant admitted during his proffers with the Government that one of the purposes of his travel to the Philippines was to have sex with minors.  In accordance with the

proffer letter he had signed, defendant could not have introduced at trial any evidence that was contradictory to what he had said at the proffers.

Moreover, the Government has evidence that specifically refutes this affirmative defense which includes: (1) a deed that showed defendant owned a house in Pennsylvania; (2) internet protocol and travel records that demonstrate defendant was communicating with minors in the Philippines while he was in Pennsylvania; (3) records indicating that defendant maintained an active driver's license in the United States since 2001 and routinely took photos in Pennsylvania to renew his license; (4) records indicating that defendant filed for bankruptcy three times in Pennsylvania; and (5) postal records indicating that defendant continued to receive mail at his Pennsylvania address.  Given the plethora of evidence, including defendant's own statements, that shows defendant lived in Pennsylvania and traveled to the Philippines for the purpose of having sex with minors, it is inconceivable that this affirmative defense would have succeeded at trial.

Defendant has failed to meet his burden under Hill v. Lockhart for his claims that Maurer and Ortiz provided him with ineffective assistance.  Both attorneys acted reasonably in representing defendant.

IV

Defendant has not shown a fair and just reason for requesting a withdrawal of his guilty plea. He has not established any credible evidence of his innocence. Indeed, the evidence of guilt is overwhelming. Nor has he advanced any meritorious reasons to withdraw that plea.[4] Accordingly, his motion to withdraw his guilty plea will be denied.

---

4.  As a result, the court does not need to reach the issue of prejudice to the Government by any withdrawal of defendant's guilty plea. <u>See</u>, <u>Jones</u>, 336 F.3d at 255.