IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CRAIG ALEX LEVIN | : | NO. 19-728 |

MEMORANDUM

Bartle, J. September 23, 2026

Craig Alex Levin, a former high school teacher, pleaded guilty on June 29, 2022 to: two counts of interstate and foreign travel for the purpose of engaging in illicit sexual conduct with a minor (18 U.S.C. § 2423(b) and (f)); one count of attempted sex trafficking of a minor (18 U.S.C. §§ 1591(a)(1), (b)(2) and (c), and §§ 1594 and 1956 (a)(1)); two counts of distribution of child pornography (18 U.S.C. § 2252(a)(2) and (b)(1)); and one count of transportation of child pornography (18 U.S.C. § 2252(a)(1) and (b)). The charges stemmed from Levin's numerous trips from his home in the Philadelphia area to the Philippines for the purpose of engaging in sex with minors. While there, he took advantage of numerous poor underage Filipino girls.

The court, after denying Levin's motion to withdraw his guilty plea, sentenced him to a total of 420 months in prison. The Court of Appeals affirmed. United States v. Levin, No. 23-1911, 2024 WL 4249487, at *3 (3d Cir. Sept. 20, 2024).

Before the court is the motion of Levin under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He asserts that his successive attorneys, Richard Mauer, Esquire and Luis Ortiz, Esquire rendered him ineffective assistance of counsel and that the Government had engaged in misconduct by falsely claiming that several alleged minor victims had recanted "affidavits of desistance" which Levin believed to be helpful to his defense.

I

Levin claims, as noted above, that two of his lawyers, who represented him in succession, violated the Sixth Amendment to the Constitution which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) held that to establish ineffective assistance of counsel the defendant must show that counsel's performance was deficient. First, he must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Second, the defendant must show that he was prejudiced by counsel's deficiency, that is "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at

694. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

II

Levin's first attorney was Richard Maurer. Levin first asserts that he wanted to make a proffer to the Government to establish his innocence but that Maurer told him it would be of little risk. Levin further states that Maurer never told him that his proffered statements could be used against him if the thrust of his defense was contrary to what he told the Government. Had he known this risk, Levin insists, he would never have gone forward with his proffer.

What Levin states about Maurer's failure to advise him about the effects of a proffer is simply not true. Maurer testified credibly and at length at the hearing the court held on February 2, 2023 on defendant's motion to withdraw his guilty plea. Maurer explained that he had warned Levin on multiple occasions of the dangers of making a proffer but Levin persisted and did so anyway against the advice of Maurer. Levin during his two proffer sessions admitted that he had had sex with underage girls in the Philippines and that this was one of his reasons for travelling to that country.

Levin raised this claim of Maurer's deficiency on direct appeal. Our Court of Appeals rejected it:

> Levin's first attorney, Richard Maurer, did not perform deficiently by allowing him to engage in proffer sessions with the Government. At the hearing on Levin's withdrawal motion, Maurer testified that he met with Levin repeatedly to discuss the Government's extensive evidence. That evidence included notebooks in which Levin rated the victims based on their sexual interactions with him, appearances, and ages. Also, there were Facebook messages in which Levin made "disturbing, graphic references to sex with underage girls." Mot. Hr'g Tr. 163:23 (Feb. 2, 2023) (App. 278). Despite acknowledging the weight of the evidence against him, Levin asked Maurer to arrange a proffer session with the Government. Maurer reviewed a sample proffer letter with him and explained the risks involved, including that Levin would lose the ability to contradict anything he said in a proffer at trial. Still, on Levin's insistence, Maurer arranged two proffer sessions. In those meetings, Levin admitted to having sex with underage girls in the Philippines, traveling there with that purpose, and knowing it was wrong to take advantage of their socioeconomic status but doing it anyway. On that evidence, it was not an abuse of discretion for the District Court to conclude that Maurer's actions did not provide a basis for withdrawing the plea.

United States v. Levin, No. 23-1911, 2024 WL 4249487, at *2 (3d Cir. Sept. 20, 2024).

Maurer's representation was not ineffective with respect to Levin's proffers. On the contrary, Maurer gave him sound advice which he rejected.

Levin also maintains that Maurer was ineffective because he did not properly investigate the government's

challenge to the affidavits of three Filipino girls. In those affidavits, they exonerated Levin of any wrongdoing and in two of the affidavits also recanted their prior "false" inculpatory statements against him.

Maurer did file a motion to dismiss the Indictment based on false witness testimony. The court denied the motion as premature. The affidavits were of questionable authenticity and reliability and were hearsay. In addition, as the case proceeded and Maurer obtained the Government's discovery, it was obvious that the evidence against Levin was overwhelming to put it mildly. The evidence included Levin's own notebooks in which he scored the numerous minors with whom he had sexual encounters as well as his incriminatory Facebook communications with minors. Levin had also made critical admissions of his guilt to the Government during his proffer sessions. Levin has not shown that Maurer's performance was deficient as it pertains to the questionable affidavits. Levin's assertion that Maurer provided ineffective assistance of counsel with respect to the affidavits is totally without merit.

Finally, Levin claims that Maurer was ineffective in failing to investigate the Government's claim that a continuance was needed because it was impossible for a government witness to travel because of a typhoon in Cebu in the Philippines. Levin

has not shown that Maurer's performance in this regard was deficient or that he was prejudiced.

In sum, Maurer clearly provided Levin with the assistance of counsel in conformity with the Sixth Amendment to the Constitution.

III

On April 4, 2022, the Court permitted Mauer to withdraw his appearance for Levin and appointed Luis Ortiz in his stead. Levin now claims that Ortiz provided ineffective assistance of counsel in advising him to enter a plea of guilty. He asserts that Ortiz, like Mauer, had failed to pursue and develop a defense around the affidavits of three minors who allegedly swore they had not had sex with him. The Government had told counsel that it intended to bring these individuals from the Philippines to testify at trial. Ortiz rightly counseled Levin that it was their testimony which would be significant and that the affidavits would not help his defense. Without belaboring the point, Ortiz reviewed with Levin the plethora of evidence against him. Thereafter, Levin pleaded guilty.[1] At the June 29, 2022 guilty plea hearing, the Court engaged with him in a lengthy and detailed colloquy. He agreed that the facts recited by the Assistant United States Attorney

[1] On two prior occasions, Levin indicated that he wished to plead guilty, and the Court scheduled hearings. On both occasions, he changed his mind during the hearings.

were accurate. He acknowledged that he was pleading guilty of his own free will and that he was in fact guilty as charged. He agreed that his plea was voluntary and not the result of force or threats. He had also signed a guilty plea agreement. In response to the Court's questions, he answered he had read it, had understood it, and had discussed it with his attorney before he signed it.

Levin, after obtaining a third lawyer, moved to withdraw his guilty plea. The court held an evidentiary hearing at which both Maurer and Ortiz were witnesses. Levin raised the same issue then that he is raising now – that his lawyer improperly persuaded him to enter a guilty plea. The court, after taking evidence from Ortiz, found him credible and denied Levin's motion. United States v. Levin, No. 19-cr-728, 2023 WL 2290255, at *4-5 (E.D. Pa. Feb. 28, 2023). Levin raised the issue of Ortiz's deficiency on appeal. The Court of Appeals rejected the argument. It stated:

> Levin's second attorney, Luis Ortiz, likewise did not perform deficiently. Levin alleged that Ortiz failed to obtain relevant discovery, primarily affidavits in which three victims purported to recant their earlier videotaped statements to police. But at the hearing, Ortiz testified that he obtained those affidavits well in advance of the plea and fully discussed their contents with Levin. Nor was Ortiz's performance deficient with respect to his advice that Levin plead guilty. Ortiz had good reason to doubt the veracity of those affidavits: he had confirmed with the Government that at

> least two of those witnesses had visas and were prepared to testify at trial consistent with their original statements to police, not their alleged recantations.
>
> Similarly, Ortiz explained that Levin's alibis were not credible. For instance, Levin's assertion that he resided in the Philippines and traveled there to visit his residence, not to have sex with minors, was contradicted by a deed to a house he owned in Pennsylvania and an active Pennsylvania driver's license, as well as internet and travel records. And even on its face, that assertion would not have helped Levin because, as Ortiz explained, the Government would have to prove not that Levin's sole purpose of travel was to have sex with minors but only that it was one of his motivating purposes. See, e.g., United States v. Schneider, 801 F.3d 186, 194 (3d Cir. 2015) ("[S]exual contact with the victim need not be [the defendant's] only or most important purpose for a jury to convict him of violating § 2423(b)."). After remarking that "it is inconceivable that this affirmative defense would have succeeded at trial[,]" United States v. Levin, 2023 WL 2290255, at *4 (E.D. Pa. Feb. 28, 2023), the District Court determined that Ortiz's performance was not deficient, see id. at *5. Accordingly, it was not an abuse of discretion to deny Levin's motion to withdraw his guilty plea on that ground.

United States v. Levin, No. 23-1911, 2024 WL 4249487, at *3 (3d Cir. Sept. 20, 2024).

The motion of Levin that Ortiz rendered ineffective assistance of counsel is likewise totally without merit.

IV

Finally, Levin argues that he is entitled to relief under § 2255 because "[t]he government engaged in misconduct by

falsely claiming that the alleged victims had renounced their affidavits of desistence and that a continuance was needed[.]" Levin has provided no basis for his conclusory statements that the Government engaged in misconduct. This claim is baseless.

V

Craig Alex Levin is an intelligent individual and as noted, a former high school teacher. He knew exactly what he was doing when he pleaded guilty to the heinous crimes involved here. The evidence against him, including his own admissions, was overwhelming. He pleaded guilty knowingly and voluntarily. He pleaded guilty because he was in fact guilty as charged.

Levin had excellent and experienced lawyers in Richard Maurer and Luis Ortiz, who were burdened with a most difficult and challenging client. They were both a credit to their profession. They were in no way deficient in their representation of Levin.

Levin's § 2255 motion is groundless, and no certificate of appealability will issue.